IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARVIN W. MILLSAPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:13CV263 |
| | ) |
| OFFICER DILLINGHAM, | ) |
| MS. KENNEDY, B. LILES, | ) |
| LIEUTENANT LEWIS SMITH, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND RECOMMENDATION

This prisoner civil rights action comes before the Court on a Motion to Dismiss [Doc. #29] filed by Defendants Dillingham, Liles, and Smith, and a Motion for Leave to Add Party [Doc. #36] filed by Plaintiff Millsaps. Plaintiff is proceeding *pro se* in this 42 U.S.C. § 1983 action and has responded to Defendants' Motion to Dismiss. Defendants contend that Plaintiff's claims should be dismissed based on *res judicata*, in light of a state administrative proceeding involving similar claims by Plaintiff. For the reasons set out below, the Court will recommend that this case be dismissed, although the Court will recommend dismissal under 28 U.S.C. §§ 1915(e)(2) and § 1915A for failure to state a claim upon which relief may be granted, rather than *res judicata*.

I.  BACKGROUND

Plaintiff is a North Carolina state inmate who was incarcerated at the Albemarle Correctional Institution during time period relevant to this action. Plaintiff, whose claims relate to his prison diet, names as defendants Officer Dillingham of the prison kitchen staff,

Ms. Kennedy, who was a dietician at the prison, Ms. Liles, who was a dietician at the regional prisons office, and Lieutenant Lewis Smith, the administrator of Albemarle Correctional Institution.

In Plaintiff's Complaint [Doc. #2] and amendment thereto [Doc. #5] (collectively "Amended Complaint"), Plaintiff alleges that Defendants failed to provide him a therapeutic diet free of bran flakes, soy products, and processed meat products, which allegedly caused him to break out in hives, vomit, and suffer severe abdominal pain. Plaintiff alleges that he was first referred by Dr. Hassan, the facility physician, to a prison dietician in November 2012, after prescribed medications had failed to alleviate his medical issues. Plaintiff communicated to the dietician, Defendant Kennedy, his belief that his diet, particularly processed meats, was the cause of his medical problems. However, according to Plaintiff, Defendant Kennedy told Plaintiff that the doctor had not "approve[d] the diet to get real meats on [his] diet tray[]." (Compl. [Doc. #2] at 3.)[1] After filing a grievance, Plaintiff again met with Defendant Kennedy, who placed him on the MNT-2 therapeutic diet and, according to Plaintiff, stated that no processed meats would be included in the diet. (Id.) Plaintiff alleges that despite this, and despite further assurances from Defendant Dillingham that he would "take care of the diet trays," the prison continued to serve him processed meats. (Id.)

Thereafter, in December 2012 and early 2013, Plaintiff had several meetings and communications with Defendants Kennedy, Dillingham, and Liles concerning his diet. Upon recommendation of Defendants Kennedy and Dillingham, Plaintiff wrote to Defendant Liles regarding his diet, who responded that Plaintiff should see the facility physician if he believed

---

[1] Citations to the Complaint are to the page numbers assigned by the CM/ECF system.

2

that soy was the cause of his medical problems. (Id.) Defendant Liles noted that "[a] nutrition assessment was completed by a clinical dietician [and] . . . . [n]o positive allergy results for soy were found." (Id. at 23.)² Defendant Liles further informed Plaintiff that the MNT-2 diet, which the facility physician had approved and ordered, "will contain Bran [Flakes], toast, and ground hamburger patties." (Id.) Defendant Liles also wrote that although the prison did not have a "gastric diet" available, which Plaintiff had apparently requested, a bland diet was available with an appropriate diagnosis. (Id.) Defendant Liles stated that "Bran Flakes, toast and ground hamburger patties will also be served on [the bland diet] menu." (Id.)

Plaintiff again saw Dr. Hassan in early 2013. According to Plaintiff, Dr. Hassan stated that Plaintiff's blood work was "abnormal," but that he did not know the cause of Plaintiff's problems. (Id. at 3.) Dr. Hassan prescribed medication and referred Plaintiff to Defendant Kennedy again, and on March 11, 2013, Plaintiff met with Defendants Kennedy, Dillingham, and Liles regarding his diet. (Id.) On March 14, 2013, he was placed on a bland diet. (Id.) Plaintiff contends that Defendants communicated that the diet would include "hamburger steak" in place of processed meats. (Id.) However, Plaintiff states that on March 18, 2013, he was again served processed hamburger meat. (Id.) Plaintiff alleges that Defendants ignored his complaints and his need for a diet free of processed meats and soy, and that they did not respond reasonably in denying him such a diet. (Am. Compl. [Doc. #5] at 1.) Plaintiff alleges

---

² In evaluating Plaintiff's claims, the Court may consider documents attached to the Complaint. See Fed. R. Civ. P. 10(c); Philips v. Pitt Cty.Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Further, where "a document attached to the pleadings contradicts the allegations of the complaint, the document controls in a Rule 12(b)(6) motion to dismiss." Moorehead v. Keller, 845 F. Supp. 2d 689, 693 n.1 (W.D.N.C. 2012) (citing Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1975)).

3

that Defendants' actions amount to deliberate indifference in violation of the Eighth Amendment. (Id.)

II. DISCUSSION

Plaintiff previously filed a negligence claim with the North Carolina Industrial Commission against the North Carolina Department of Public Safety under the state's Tort Claims Act based on the facts outlined above. (See Decision and Order [Doc. #26-1].) A Deputy Commissioner denied Plaintiff's negligence claim on March 26, 2014, and Plaintiff did not appeal the decision. Defendants contend that the Deputy Commissioner's decision bars Plaintiff's instant § 1983 claim under the doctrine of *res judicata*.

The preclusive effect to be given to prior state court judgments is covered by 28 U.S.C. § 1738, although that section "governs the preclusive effect to be given the judgments and records of state courts, and is not applicable to [] unreviewed state administrative factfinding." Univ. of Tennessee v. Elliott, 478 U.S. 788, 799 (1986) (emphasis added). Instead, in considering state administrative factfinding, the Court applies "federal common-law rules of preclusion." Id. Specifically, "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Id. (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)). This test effectively includes two prongs: first, the Court considers whether the administrative agency was acting in a judicial capacity and whether the parties had a full and fair opportunity to litigate. Second, if the first prong is satisfied, the Court then considers what preclusive effect the decision would be given in the state's courts.

4

In applying this test in the context of claims filed with the North Carolina Industrial Commission, the Court of Appeals for the Fourth Circuit has held that an unappealed decision of an individual commissioner does not satisfy the first prong of this analysis because "the parties could have no expectation that determinations of fact would be final," and thus lacked an adequate opportunity to litigate. See Solomon v. Dixon, 904 F.2d 701, 1990 WL 76502, at *2 (4th Cir. May 29, 1990). Thus, under this rule, the unappealed determination of a Deputy Commissioner would not clear the first prong of the federal common law test in Elliott, and would not be entitled to preclusive effect.

Moreover, even if the first prong of Elliott were satisfied, it is not clear what preclusive effect such a decision would be given under North Carolina preclusion principles. In North Carolina, "[u]nder the doctrine of res judicata or 'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies. . . . The doctrine prevents the relitigation of 'all matters . . . that were or should have been adjudicated in the prior action.'" Whitacre Partnership v. Biosignia, Inc., 591 S.E.2d 870, 880 (N.C. 2004) (quoting McInnis & Assocs., Inc. v. Hall, 349 S.E.2d 552, 556 (N.C. 1986)). However, in this case, Plaintiff's present § 1983 claims alleging Eighth Amendment violations could not have been presented in the prior action. Under the North Carolina Tort Claims Act, the Industrial Commission's jurisdiction extends only to claims brought against a state agency as a result of the negligence of a state employee. See N.C. Gen. Stat. § 143-291. Because the Commission would not have been authorized to hear Plaintiff's § 1983 claim, it is not clear that North Carolina preclusion principles would bar Plaintiff from bringing that claim forward now. See Wilkins v. Gaddy, No. 3:08-CV-138-RJC, 2012 WL

5

2917887, at *2 (W.D.N.C. July 17, 2012) (finding *res judicata* inapplicable where the "[p]laintiff was unable to litigate his Eighth Amendment claim regarding Defendant's intentional conduct in the Industrial Commission because the state Tort Claims Act does not permit suits based on intentional conduct. . . . And Plaintiff was unable to litigate his claim regarding [another officer's negligent conduct] in federal court because . . . there is no subject matter jurisdiction in federal court to litigate against a state employee for negligent conduct. Accordingly, Plaintiff was required to split up his claims."). Thus, it is not clear that *res judicata* would apply.

Nevertheless, the Court notes that Plaintiff is proceeding *in forma pauperis* [Doc. #4], and pursuant to the *in forma pauperis* statute, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2); see also § 1915A. To state a plausible Eighth Amendment claim for lack of proper care or inappropriate medical treatment, Plaintiff must allege that Defendants acted with "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Phelps v. Perry, No. 1:14-CV-133-FDW, 2015 WL 1013877, at *1 (W.D.N.C. Mar. 9, 2015). "'[D]eliberate indifference entails something more than mere negligence . . . .' It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)). "Deliberate indifference can be established by showing that the medical treatment was 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Sharpe v. S. Carolina Dep't of Corr., 621 F. App'x 732, 733 (4th Cir. 2015) (quoting Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) overruled in part on other

grounds by Farmer, 511 U.S. at 837). A disagreement between the prisoner and prison officials over proper medical treatment is insufficient to state a § 1983 claim. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

In this case, Plaintiff alleges that he informed Defendants of his severe abdominal pains several times throughout late 2012 and early 2013. However, Plaintiff has failed to adequately allege that Defendants disregarded a substantial risk of serious injury to Plaintiff, or that their response to his medical need was so inadequate "as to shock the conscience or be intolerable to fundamental fairness." Sharpe, 621 F. App'x at 733 (internal quotation omitted). Indeed, Plaintiff's allegations make clear that Defendants consulted with Plaintiff several times regarding his diet, and made changes to Plaintiff's diet as a result. After Dr. Hassan referred Plaintiff to Defendant Kennedy for a dietary consultation, Plaintiff was put on the MNT-2 diet, which, according to documents Plaintiff attached to his Complaint, eliminated fresh fruits and vegetables, but allowed for canned or cooked fruits and vegetables and finely chopped meats. (Compl. [Doc. #2] at 24, 36.) Further, the letter Defendant Liles sent to Plaintiff indicated that the facility physician approved and ordered the MNT-2 diet, which contained Bran Flakes and ground hamburger patties. (Id. at 23.) When Plaintiff's medical issues did not abate, Dr. Hassan prescribed medication (id. at 35) and referred Plaintiff back to Defendant Kennedy for an additional dietary consultation. Defendants thereafter placed Plaintiff on a bland diet, although the diet continued to include processed meats.

Plaintiff's allegation that Defendants failed to remove processed meats from his diet does not state a plausible claim for deliberate indifference. Plaintiff has not alleged that any medical professional or dietary specialist had recommended the elimination of processed

7

meats from his diet. In fact, documents attached to the Complaint indicate that Dr. Hassan ordered a diet which included "ground hamburger patties" and "finely chopped meats." (Id. at 23, 24, 36.) Thus, allegations that Defendants did not serve Plaintiff a diet free of processed meats do not state a plausible claim that Defendants disregarded a substantial risk to Plaintiff's health. See Phelps, 2015 WL 1013877, at *2 (stating that although "Plaintiff's complaint plainly expresses disagreement with the special diet that was recommended . . . mere disagreement with the course of medical treatment will not support an Eighth Amendment claim for deliberate indifference to serious medical needs."); Atkins v. Schwartz, No. 7:11CV00493, 2011 WL 10065421, at *3 (W.D. Va. Oct. 31, 2011) ("This sort of disagreement between the patient and medical staff over the appropriate course of treatment simply does not support a claim of deliberate indifference as required to state a constitutional claim.").

In sum, Plaintiff's allegations do not demonstrate that Defendants ignored or otherwise failed to adequately respond to his serious medical needs. Specifically, Defendants consulted with Plaintiff several times regarding his diet and twice made dietary accommodations in attempts to address his medical problems. As noted above, Plaintiff has not alleged that any medical professional had determined that Plaintiff's health problems were related to his consumption of processed meats. Rather, it was only Plaintiff's opinion that processed meats were the cause. Accordingly, Plaintiff has not adequately alleged that Defendants knew of and disregarded a substantial risk of serious harm to Plaintiff's health by continuing to serve him a diet that included processed meats. Further, although Plaintiff alleges that Defendants falsely represented that his diet would not contain processed meats, the letter Plaintiff received from Defendant Liles clearly stated that both the MNT-2 and bland diets would contain ground

8

hamburger patties. (Compl. [Doc. #2] at 23.) Plaintiffs allegations do not state a plausible § 1983 claim for deliberate indifference under the Eighth Amendment. Accordingly, the Court will recommend that Plaintiff's Amended Complaint be dismissed with prejudice for failure to state a claim.

The Court notes that Plaintiff has filed a Motion for Leave to Add Party [Doc. #36]. In that Motion, Plaintiff seeks to add three additional defendants: Kimberly D. Grande, who is one of the attorneys employed by the North Carolina Department of Justice defending this action, Ms. Parker, whom Plaintiff describes as the head dietician for all prisons in the state, and her assistant dietician, Ms. Carson. Plaintiff does not set out any additional facts or different claims against these persons. Although Plaintiff filed his Motion within 21 days after service of Defendants' Rule 12(b)(6) motion, he has already amended his Complaint one time. (See Docs. #2, #5.) Therefore, pursuant to Federal Rule of Civil Procedure 15(a), he may amend his Complaint again only with leave of court or the opposing party's written consent, which he has not shown that he has received. Given the analysis set forth above, Plaintiff's attempt to amend his Complaint is futile and should be denied on that basis. See Foman v. Davis, 371 U.S. 178, 182 (1962) (motion to amend may be denied if futile under Rule 15(a)).[3]

---

[3] The Court notes that Plaintiff has also filed a supplement to his Amended Complaint [Doc. #28]. In the document, Plaintiff appears to assert several state-law claims against Defendants, including "Complaint on a Promissory Note," "Complaint on Account," two "Complaint[s] for Negligence," "Complaint for Specific Performance," "Complaint in the Alternative," "Complaint for Fraud," and "Complaint for Money Paid by Mistake." (Id. at 1-4.) The Court has reviewed this document, and finds that Plaintiff has not proposed any new facts which would state a valid claim for relief. Thus, to the extent Plaintiff is seeking to further amend his Complaint, that request is futile. The document also includes sections titled "Motion for Judgment on the Pleadings" and "Motion for Definite Statement." (Id. at 4.) As the Court will recommended dismissal of Plaintiff's Amended Complaint, these requests are moot.

III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Plaintiff's Motion for Leave to Add Party [Doc. #36] be DENIED, and that Plaintiff's Amended Complaint be dismissed pursuant to 28 U.S.C. § 1915(e) and § 1915A, rendering Defendants' Motion to Dismiss [Doc. #29] moot.

This, the 2nd day of February, 2016.

/s/ Joi Elizabeth Peake
United States Magistrate Judge